DECISION.
{¶ 1} Following a bench trial, defendant-appellant Fredrick Evans was found guilty of breaking and entering, safecracking, and two counts of theft. The trial court sentenced Evans to concurrent twelve-month terms of incarceration on the breaking-and-entering and theft charges, and to a consecutive eighteen-month term on the safecracking charge. Evans appeals, assigning the following as error: (1) the trial court's failure to merge the four charges for sentencing purposes; (2) the imposition of maximum and consecutive prison terms; (3) improprieties in the sentencing entry; and (4) the weight and sufficiency of the evidence.
I. Background Facts
{¶ 2} At trial, the state presented evidence that at 3:00 a.m., on June 25, 2001, Woodlawn Police Officer Donald Fourth and another officer were on patrol when Officer Fourth saw a car exit from the Wyoming Recreation Center. Finding this to be suspicious, Officer Fourth pulled the car over. The driver of the car, Evans, gave Officer Fourth false information about his identity. After entering the car's license-plate number in his computer, Officer Fourth obtained Evans's social-security number and discovered that Evans had three open warrants. When Officer Fourth confronted Evans about this, Evans repeated the false information about his identity. Officer Fourth responded that he would take Evans to the police station to verify who he was, and Evans then confessed to his true name.
{¶ 3} At that point, the officers arrested Evans and recovered from Evans's pocket more than $600 that had been bundled in a rubber band. In conducting an inventory of Evans's car, the officers recovered a handgun from the trunk.
{¶ 4} Russell Embry, a manager of Jumbo Wholesale of Ohio, Incorporated, testified that when he arrived at work on the morning of June 25, 2001, the office had been broken into. An inner office "was a shambles, everything. And the safe — the safe is in view as you first enter the office. I noticed right off that the drawers had been jimmied open and torn — completely torn apart." A second locked safe had been "jimmied open." Embry testified that more than $5,000 in cash and coins had been stolen. Other items stolen from the business included a handgun owned by Charles Duda, some gold coins, a Susan B. Anthony dollar, a personal check, and a cooler.
{¶ 5} An officer discovered the stolen cooler stashed next to an air-conditioning unit outside the southwest corner of the building. The cooler weighed more than 200 pounds because it contained so much cash and coinage. Woodlawn Police Detective James Ohl asked a fellow officer to walk along the building and over to the recreation center "because it became apparent that there was a pattern of direction of travel." The officer complied and recovered two rubber gloves and a leather work glove from the grassy area between the business and the recreation center, which was approximately 300 yards away. From some writing on the leather glove, Russell Embry identified it as one that belonged to his company and was used by his employees. Detective Ohl testified that it would have taken no more than forty-five seconds for a person to drive a car from where Evans's car had been stopped over to Jumbo Wholesale.
{¶ 6} During Detective Ohl's investigation, he noted that a garage door had been bent inward from its frame, and that two different offices had been broken into. Detective Ohl testified that he called Special Agent Mike Murphy from the Bureau of Criminal Identification and Investigation ("BCI") to help him in the processing of the crime scene. Murphy took photographs of the interior and exterior of the business, as well as the surrounding area. The investigators found paperwork strewn about the office floor, some of which had unusual shoe prints on it.
{¶ 7} Detective Ohl realized that Evans might have been involved in the thefts, so he searched Evans's car and recovered a flashlight, two screwdrivers, and a mallet, as well as the stolen gold coins and the Susan B. Anthony dollar. Also, Charles Duda identified the gun recovered from Evans's car as being his own. Detective Ohl then went to the Hamilton County Justice Center where Evans was being held and recovered from him the pair of gym shoes that he had been wearing when he was arrested.
{¶ 8} The gym shoes were submitted to BCI along with some paperwork that had been recovered from the floor of the offices. The papers had the shoe prints on them. A forensic scientist with BCI concluded that positive identifications were not possible, but that the footprints could have been made by Evans's shoes based upon their tread size and design. The defense submitted a report from an independent forensic examiner that indicated that a positive connection between the shoe prints and the shoes could not be made.
II. Allied Offenses of Similar Import
{¶ 9} In his first assignment of error, Evans claims that "where [he] was charged with breaking and entering, safecracking, theft, and theft, there is but one act and it was error for the Court to impose separate consecutive sentences." Essentially, Evans argues that the trial court erred by imposing sentences for each of the four offenses because they were allied offenses of similar import. It is well settled in Ohio that if a defendant's actions constitute two or more allied offenses of similar import, the defendant may be convicted of only one offense.[1]
"But if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C.2941.25(B).[2]
{¶ 10} If the elements of the crimes do not correspond to such a degree that the commission of one will result in the commission of the other, the crimes are not allied offenses of similar import, and multiple convictions are permitted.[3] In State v. Tierney,[4] the Eighth District Court of Appeals recently held, from a comparison of the offenses of theft, safecracking, and breaking and entering, that they were not allied offenses of similar import:
 Theft requires for conviction the purpose to deprive the owner of property, something not required in the safecracking or breaking and entering statutes. Safecracking requires the showing of knowingly entering or forcing an entry into a safe, something not required in the theft or breaking and entering statutes. Finally, the breaking and entering statute requires the showing of trespass, something not required in the theft or safecracking statutes. [Citations omitted.][5]
 We agree with the analysis in Tierney and hold that the trial court properly sentenced Evans on each charge because the offenses of theft, safecracking, and breaking and entering were of dissimilar import.
 As for Evans's conviction of two separate theft offenses, "it is well settled that even where a defendant commits the same offense against different victims, a separate animus may exist for each victim such that the defendant can properly be convicted of and sentenced on multiple counts."[6] This court has held that a defendant was properly convicted of four counts of aggravated robbery where the defendant walked into a salon, held the patrons at gunpoint, and stole four purses sitting on a counter.[7] In this case, where Evans stole property from two different owners, the corporation and Mr. Duda, he was properly convicted of two counts of theft. Accordingly, we overrule the first assignment of error.
III. Sentencing Errors
{¶ 11} In his second assignment of error, Evans argues that the trial court erred by imposing maximum and consecutive prison terms because it failed to make the findings required by R.C. 2929.14(C) and (E). We agree.
{¶ 12} To impose a maximum sentence upon one who is not a major drug offender or a repeat violent offender, a trial court must find that the offender either has committed the "worst form of the offense" or poses the greatest likelihood of recidivism.[8] A trial court sentencing an offender to a maximum prison term must make the required findings and specify on the record its reasons for those findings.[9]
In this case, the trial court considered certain recidivism factors under R.C. 2929.12(D), including that Evans had been on community control at the time of the offenses, that Evans had previously been incarcerated, and that Evans had shown no genuine remorse. While these considerations would have supported a finding that Evans posed the greatest likelihood of committing future crimes, the trial court made no such finding to justify its imposition of a maximum prison term. As we stated in Statev. Brown, "This court will not infer whether the trial court `implicitly [made] those findings and gave [its] reasons.'"[10] Because the court in this case did not make the required findings, we "clearly and convincingly find" that the maximum sentence was contrary to law.[11]
{¶ 13} Before imposing consecutive sentences, a trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that he poses to the public.[12] Further, the court must find that one of the factors listed in R.C. 2929.14(E)(4)(a) through (c) is applicable. And, in imposing consecutive sentences, a trial court must provide its reasons for each finding.[13] In this case, the court properly found that the factor listed in R.C. 2929.14(E)(a) was present, in that Evans had committed the offense while on community control. But the court failed to make either of the other two findings necessary for consecutive terms, or to give its reasons for those findings. Because the trial court failed to make the findings required for the imposition of maximum or consecutive sentences, we sustain the second assignment of error.
{¶ 14} Where the trial court was required to make findings under R.C. 2929.14 (E)(4) for the imposition of consecutive sentences, and the court failed to state the required findings on the record, this court must vacate the sentences and remand the case to the sentencing court with instructions to state, on the record, the required findings.[14]
If the trial court failed to state the findings or to give the reasons required for the imposition of the maximum prison term pursuant to R.C.2929.14(C) and 2929.19(B)(2)(d), this court may itself modify the sentence or may vacate the sentence and remand to the trial court for resentencing.[15]
{¶ 15} Accordingly, we choose to vacate the sentences imposed, to remand this cause to the trial court, and to order the trial court to resentence Evans in accordance with the law and this Decision. If the trial court imposes maximum or consecutive sentences, we further instruct the court to make the findings required by R.C. 2929.14(C) and (E), and to state its reasons for those findings as required by R.C. 2929.19(B)(2).
IV. Sentencing Entry
{¶ 16} In his third assignment of error, Evans argues that the trial court's sentencing entry was contradictory and that the trial court failed to give him "the days of credit stated therein." The sentencing entry separately listed each of the four counts and the term of incarceration imposed for each count. Next to each count, the court wrote, "Credit 199 days." At oral argument before this court, counsel for Evans has indicated that Evans had served 199 days in jail at the time he was sentenced. Yet Evans argues that because the court made the eighteen-month term of incarceration consecutive to the three twelve-month sentences of incarceration, he should be granted at least 398 days of credit. We disagree. While the trial court's sentencing entry was not a model of clarity, we note that the latter portion of the entry clearly listed the total credit to be given to Evans as "199 days served." Furthermore, Evans was entitled to credit only for the period that he had actually served prior to his sentencing.[16] Accordingly, we overrule the third assignment of error.
V. Weight and Sufficiency of the Evidence
{¶ 17} In his final assignment of error, Evans challenges the weight and sufficiency of the evidence to support his convictions. In reviewing a claim of insufficient evidence, an appellate court must examine the evidence presented at trial and determine whether that evidence, viewed in a light most favorable to the prosecution, could have convinced any rational trier of fact that the defendant was guilty beyond a reasonable doubt.[17] In reviewing a weight-of-the-evidence question, an appellate court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[18]
{¶ 18} After reviewing the record, we hold that there was sufficient evidence presented to support Bryant's convictions for both theft charges, breaking and entering and safecracking, and that the convictions were not against the weight of the evidence. The final assignment of error is overruled.
{¶ 19} Accordingly, we affirm the judgment in part, but we vacate the sentence imposed. We remand this cause to the trial court and order the court to resentence Evans in accordance with the law and this Decision. If the trial court imposes maximum or consecutive sentences, we further instruct the court to make the findings required by R.C. 2929.14(C) and (E), and to state its reasons for those findings as required by R.C.2929.19(B)(2).
{¶ 20} Sentence vacated and cause remanded.
Hildebrandt, P.J., and Gorman, J., concur.
[1] R.C. 2941.25(B); State v. Rance, 85 Ohio St.3d 632, 636,1999-Ohio-291, 710 N.E.2d 699.
[2] Rance, supra, citing State v. Jones (1997), 78 Ohio St.3d 12,13-14, 676 N.E.2d 80.
[3] Id.
[4] 8th Dist. No. 78847, 2002-Ohio-2607.
[5] Id.; see, also, State v. Green, 3rd Dist. No. 14-2000-26, 2001-Ohio-2197 (safecracking and theft are not allied offenses of similar import); State v. Metcalf, (Mar. 23, 1998), 4th Dist. No. 97 CA 937 (safecracking and theft are not allied offenses of similar import).
[6] State v. Gillis (Apr. 28, 2000), 1st Dist. No. C-990709, citingState v. Raheem (Sept. 18, 1998), 1st Dist. No. C-970928.
[7] Raheem, supra; see, also, State v. Hughley (1984), 20 Ohio App.3d 77,484 N.E.2d 758; State v. Phillips (1991), 75 Ohio App.3d 785, 789-790,600 N.E.2d 825.
[8] See 2929.14(C); see, also, State v. Lattimore, 1st Dist. No. C-010488, 2002-Ohio-723, at ¶ 26.
[9] See R.C. 2929.19(B)(2)(d).
[10] State v. Brown, 1st Dist. No. C-010683, 2002-Ohio-2762.
[11] See R.C. 2953.08(G)(2)(b).
[12] See R.C. 2929.14(E)(4).
[13] See R.C. 2929.19(B)(2)(c).
[14] See R.C. 2953.08(G)(1).
[15] See R.C. 2953.08(G)(2).
[16] See R.C. 2967.191.
[17] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[18] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.